UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JANE DOE,

                          Plaintiff,                          Index No. 24 CV 7517

       -against-                                 **COMPLAINT**

JAMES DALIMONTE,

                          Defendant.
------------------------------------------------------------------------X

      Plaintiff, proceeding anonymously as Jane Doe ("Plaintiff"), by and through her attorneys, Law Offices of Jeffrey Lichtman, as and for her Complaint against Defendant James Dalimonte ("Defendant"), alleges upon knowledge as to herself and her own actions, and upon information and belief as to all matters, as follows:

## NATURE OF THE ACTION

      1.     This is an action for fraud, negligence, negligent infliction of emotional distress, battery, and future medical expenses arising from tort. Plaintiff seeks damages and related relief arising therefrom.

## THE PARTIES

      2.     At all times mentioned herein and at present, Plaintiff has been domiciled in Ocean County, New Jersey. At the time Plaintiff met Defendant and engaged in sexual relations as alleged herein, Plaintiff was temporarily residing in University Park, Pennsylvania while attending Pennsylvania State University. Plaintiff completed her junior year of undergraduate studies, returned home for the summer 2024, and has since returned to Pennsylvania State University in the fall to complete her undergraduate degree.

3. Upon information and belief, at all times relevant to this action, Defendant was, and still remains domiciled in Nassau County, New York. At the time of the events alleged herein, on information and belief, Defendant was temporarily residing in University Park, Pennsylvania while attending Pennsylvania State University for a one year master's degree program. On information and belief, Defendant graduated from the aforementioned program and is employed in Nassau County.

## JURISDICTION AND VENUE

4. This court has diversity jurisdiction over Defendant pursuant to 28 U.S.C. § 1332 on the grounds that the parties reside in different states and the matter in controversy exceeds $75,000. The Court has personal jurisdiction over Defendant on the grounds that Defendant resides in the Eastern District of New York.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because at least one of the parties resides in the Eastern District of New York.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

Introduction

6. In November 2023, Defendant met Plaintiff at a fraternity party while the two were attending Pennsylvania State University in University Park, Pennsylvania. Defendant was enrolled at the Smeal College of Business and studying for his master's degree in business analytics, and Plaintiff was an undergraduate student at the university.

7. Relying on Defendant's representation to Plaintiff that he was free of sexually transmitted diseases, Plaintiff – who had previously tested negative for such diseases – and Defendant had unprotected vaginal and oral intercourse on multiple occasions between

November 4, 2023 and November 11, 2023.  Through these sexual encounters, on information and belief, Defendant transmitted the Herpes Simplex Virus-1 ("HSV-1") to Plaintiff, resulting in painful outbreaks and lesions on her genitals, and a lifelong dependence on antiviral drugs and medical complications related to this virus.

8. Were the physical issues caused by Defendant not enough, he emotionally traumatized Plaintiff by denying that he had a sexually transmitted disease and then "ghosting"[1] her to return to a prior girlfriend, sending Plaintiff into a tailspin, resulting in her taking a medical leave of absence from school, attending an inpatient rehabilitation clinic for depression, and potentially derailing her academic career and ambitions to become a doctor by halting her studies for the MCATs due to the incurable disease Defendant had transmitted to her.  Plaintiff also began suffering suicidal ideations as a result of her infection with HSV-1 and even went so far as to prepare suicide notes for friends and family members due to the pain and anguish that she suffered.

9. His protestations to the contrary notwithstanding, on information and belief, Defendant knew that he was not free of sexually transmitted diseases as he represented to Plaintiff during their first sexual encounter.  Indeed, while performing fellatio on Defendant on November 11, 2023 – a day when Defendant initially claimed he was too tired to have sex with Plaintiff before unilaterally changing his mind – Plaintiff observed a chemical or medicinal taste and smell on his penis and pubic region.  On information and belief, Defendant initially hesitated to engage in sexual activity because he was experiencing a herpes outbreak that day – and

---

[1] See Ghosting, Psychology Today, available at: https://www.psychologytoday.com/us/basics/ghosting (last viewed October 22, 2024) ("Ghosting is abruptly ending communication with someone without explanation. The concept most often refers to romantic relationships ....").

Plaintiff smelled and tasted a lotion or medicinal creme that defendant had applied due to his infection.

### The Defendant's Transmission of HSV-1 to Plaintiff

10.     On or about November 4, 2023, Defendant met Plaintiff at a daytime party at the Alpha Tau Omega fraternity house at Pennsylvania State University in University Park, Pennsylvania.  Defendant introduced himself to Plaintiff as a graduate student at the university who was getting his master's degree in business analytics, a one year program,[2] and was also playing varsity lacrosse for Pennsylvania State University.  Defendant informed Plaintiff that he had graduated from Muhlenberg College the prior spring.  Plaintiff informed Defendant that she was an undergraduate student at Pennsylvania State University, was in her junior year, and was on the pre-health track, with a major in integrative science.

11.     During the daytime party, Defendant asked Plaintiff to go back to the house that he shared with other members of the Pennsylvania State University lacrosse team and have dinner together.  Plaintiff declined the invitation and left the party with a girlfriend, however, not before exchanging telephone numbers with the Defendant.  By the time she arrived at her apartment, Plaintiff and Defendant had been sending text messages to each other and Defendant again invited her to his house for dinner.  Plaintiff declined and instead invited Defendant to her apartment.

12.     Defendant arrived to Plaintiff's apartment at approximately 7 p.m. that night.  The two were talking in Plaintiff's kitchen and then Defendant kissed her and then carried Plaintiff to

---

[2] See Program Details, Smeal College, Pennsylvania State University, available at: https://mban.smeal.psu.edu/program-details/curriculum (last viewed October 22, 2024).

4

her bedroom. As Plaintiff and Defendant continued kissing and removing their clothing in Plaintiff's bedroom in anticipation of having sexual intercourse, Defendant informed Plaintiff that he did not have a condom with him, but assured plaintiff that he was free of sexually transmitted diseases. Relying on this representation from the Defendant, Plaintiff agreed to continue and Plaintiff and Defendant engaged in unprotected vaginal and oral sexual intercourse.

13. After engaging in sexual intercourse, both Defendant and Plaintiff returned to Defendant's house to spend time with Defendant's friends and housemates. At approximately 10 p.m., Defendant decided to purchase cocaine and drove himself and Plaintiff to a nearby apartment to meet with a narcotics dealer. Upon returning to his house, Defendant snorted multiple lines of cocaine throughout the night, encouraged Plaintiff to try the drug, and Plaintiff and Defendant engaged in unprotected vaginal and oral sex until approximately 4 a.m. the following morning. Plaintiff continued to agree to engage in unprotected sex with Defendant based on his earlier representation that he was free of sexually transmitted diseases.

14. On the night of November 10, 2023, Plaintiff agreed to pick up Defendant at a party and drive him back to her apartment, where Defendant again used cocaine and then Plaintiff and Defendant engaged in unprotected vaginal and oral sex throughout the night and into the next morning. Plaintiff relied on Defendant's prior representation that he was free of sexually transmitted diseases before engaging in such acts.

15. The following evening, on November 11, 2023, Plaintiff and Defendant met at Defendant's house to watch a movie and eat a pizza that Defendant had ordered for them to share. Plaintiff had brought her laptop to work on a homework assignment. During the movie, Defendant asked Plaintiff if it was fine with her if they did not have sex that night, informing her

5

that it had been a long day.  Plaintiff did not object.  Approximately ten minutes later, Defendant changed his mind and informed Plaintiff that he could not help himself as he started to kiss her.  Plaintiff finished her homework and thereafter engaged in unprotected vaginal and oral sex with Defendant based on his prior representations that he was free of sexually transmitted diseases.  While performing oral sex on Defendant, Plaintiff recalls that Defendant's penis and pubic region smelled and tasted like chemicals or a medicinal lotion.  After engaging in sexual intercourse, Defendant again used cocaine.

16.     On information and belief, Defendant was experiencing a herpes outbreak that day and had applied a lotion to his penis and pubic region, resulting in the chemical or medicinal taste and smell observed by Plaintiff.

17.     By Monday, November 13, 2023 Plaintiff began to experience some vaginal irritation and by Tuesday, November 14, 2023 Plaintiff began experiencing vaginal itchiness and odor.  Concerned that she might have a yeast infection – again, based on Defendant's representation that he was free of sexually transmitted diseases, she did not believe she had contracted one – Plaintiff asked her OB-GYN to send her a prescription for Difulcan, an antifungal medication.

18.     By the night of Tuesday, November 14, 2023, Plaintiff was in significant pain in her pubic region, with itching, burning and a worsening odor.  The next day, Plaintiff – still in excruciating pain – went to an urgent care facility and explained to the doctor that the Difulcan she had been prescribed was not working.  The doctor swabbed the red spots that had begun to appear in her pubic region so that they could be tested, and thinking they might have been the

result of irritation from her recent sexual experiences with Defendant, diagnosed Plaintiff with bacterial vaginosis and prescribed an antibiotic.

19.     By November 16, 2023, Plaintiff was experiencing severe pain in her pubic region. It was painful for her to walk or even sit and she was having flu-like symptoms, which are known to accompany a herpes outbreak.[3] That day, the beginning of fall break for Pennsylvania State University, Plaintiff called Defendant on her way home to Brick Township, New Jersey, and informed him of her symptoms and fears that he had given her a sexually transmitted disease. Defendant again denied that he ever had experienced a sexually transmitted disease and that he could have infected her. By the time she arrived home, the sores in Plaintiff's pubic region had multiplied. Her body ached and her throat was swollen. Instead of admitting that he had transmitted HSV-1 to her – the obvious cause of her symptoms – Defendant continued to dissemble, sending a text message to Plaintiff asking if she was sure it was not just a urinary tract infection.

20.     Fearing that she was experiencing a severe herpes outbreak, Plaintiff secured an emergency appointment with her gynecologist for the following day, November 17, 2023, where she was visually diagnosed with herpes. Given the severity of her full-body symptoms, the doctor informed Plaintiff that this was a primary infection and that her body had never been exposed to herpes previously. The doctor prescribed Plaintiff the antiviral medication Valtrex that same day – a drug she will remain on for the rest of her life in order to help suppress outbreaks. Shortly thereafter, Plaintiff received test results indicating that she had been infected

---

[3]  See Everyday Health, Genital Herpes Symptoms and Diagnosis, available at: https://www.everydayhealth.com/genital-herpes/guide/symptoms (last viewed October 22, 2024).

with the HSV-1 strain of the herpes virus. Notably, initial HSV-1 symptoms typically show up 2-20 days after one is infected.[4] Despite finally receiving an accurate diagnosis, Plaintiff's symptoms did not immediately improve with medication.

21. Following the diagnosis and a cosmetic surgery scheduled for the same week, Plaintiff spoke with Defendant and informed him that they needed to discuss in person about what she had been told by her gynecologist while she was home. As Plaintiff was unable to lift any heavy items for several days following her surgery, Defendant had agreed to assist with carrying her luggage upon returning to campus, at which point she planned to inform him of her diagnosis. The defendant never showed up to help as promised – and he began ignoring her communications and "unfriending"[5] her on their shared social media platforms, causing her to become deeply depressed.

Plaintiff's Mental and Emotional Spiral

22. Defendant caused Plaintiff severe emotional trauma as a result of his transmitting HSV-1 to her, potentially derailing her ambitions to become a medical professional and causing her take an urgent medical leave of absence from Pennsylvania State University in order to attend an inpatient mental health treatment program when she began to experience suicidal ideation.

23. Specifically, beginning in December 2023, Plaintiff began having suicidal thoughts, brought on by her being infected with an incurable virus by Defendant that carried with

---

[4] See Mount Sinai, Herpes Simplex, available at: https://www.mountsinai.org/health-library/report/herpes-simplex#:~:text=For%20people%20with%20symptoms%2C%20the,bumps%20that%20develop%20into%20blisters (last viewed October 22, 2024).

[5] See Merriam-Webster Dictionary, available at: https://www.merriam-webster.com/dictionary/unfriend (last viewed October 22, 2024) ("to remove (someone) from a list of designated friends on a person's social networking website").

it painful outbreaks, the need to take antiviral medication for the rest of her life, severe social stigma, and significant restrictions on her ability to experience natural child birth.  By December 10, 2023, during final exam week, Plaintiff had gone so far as to draft suicide notes to loved ones and had considered the method by which she would take her own life.  Plaintiff instead packed her things and returned home to Brick Township, New Jersey and took her last final exam virtually.

24. As a result of the severe depression experienced by Plaintiff, she was prescribed antidepressants in December 2023.  She was having difficulty getting out of bed, eating, sleeping, and was losing weight.  Plaintiff continued to debate taking her own life due to Defendant's infecting her with HSV-1 and its implications on her life.  She felt like a prisoner to her emotions and her anxiety became debilitating.  She decided not to participate in the study aborad program for which she had been accepted the following semester.  She stopped studying for the MCAT and decided to put off taking the test indefinitely.

25. After returning to college following the holiday break, Plaintiff's mental and emotional condition remained unwell.  Unable to sleep and riddled with anxiety, her grades began to slip and she rarely left her apartment.  Weekly therapy and her prescribed antidepressants were simply not sufficient to address the burden she felt by carrying this disease.

26. Thereafter, on the advice of her doctor, Plaintiff took an urgent medical leave of absence from college in February 2024 to attend a week long inpatient mental health treatment program to address her spiraling depression. While Plaintiff returned to campus to finish her junior year, she remains emotionally frail and requires the aid of a therapist due to the anxiety and fears brought on by carrying this incurable disease transmitted to her by Defendant.

<u>Implications of Plaintiff's HSV-1</u>

27. Plaintiff's HSV-1 is incurable. She has suffered multiple outbreaks since being infected with this virus by Defendant, despite the medication that she must take on a daily basis to suppress and minimize their occurrence. She will be required to take this medication with her everywhere she travels, and when she is stressed, flair-ups will be likely. Should she become pregnant, she will likely be required to give birth by Caesarian section. Defendant has robbed Plaintiff of these life experiences and choices. Defendant's transmitting HSV-1 to Plaintiff has also heightened her risk of developing encephalitis, a potentially life threatening condition.[6] In addition to these significant physical health issues, Defendant's actions have also impacted Plaintiff's mental health – and she suffers chronic stress, anxiety, and depression as a direct result of his conduct. Plaintiff attends weekly therapy sessions and will likely continue to receive counseling due to Defendant's conduct for years. Treatments for both physical and mental health issues will be costly, and should not be borne by Plaintiff for Defendant's conduct.

## FIRST CAUSE OF ACTION - FRAUD

28. Plaintiff hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. As detailed above, Defendant made repeated representations to Plaintiff regarding his health. Those representations included both false statements and omissions regarding whether Defendant was infected with a sexually-transmitted disease. Defendant not only failed to disclose that he was infected with a contagious sexually-transmitted disease, but he

---

[6] <u>Encephalitis</u>, Mayo Clinic, available at: https://www.mayoclinic.org/diseases-conditions/encephalitis/symptoms-causes/syc-20356136 (last viewed October 22, 2024).

affirmatively represented that he did not have any sexually-transmitted diseases, rendering Plaintiff completely unaware of the potential for injury.

30. Defendant made these misrepresentations despite knowing that Plaintiff was concerned about contracting a sexually-transmitted disease.

31. Relying on Defendant's misrepresentations, Plaintiff engaged in unprotected vaginal and oral sex with Defendant on multiple occasions, resulting in Plaintiff contracting the HSV-1 strain of the herpes virus.

32. In light of the foregoing and due to Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial, and will continue to suffer actual damages and irreparable harm for the rest of her life, as to which she has no adequate remedy at law.

## SECOND CAUSE OF ACTION - NEGLIGENCE

33. Plaintiff hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

34. Defendant had a responsibility to exercise reasonable care to not infect the Plaintiff with a sexually-transmitted disease. Defendant breached that duty when he engaged in unprotected sex with the Plaintiff on multiple occasions, knowing that he had a sexually-transmitted disease which could be transmitted through unprotected sexual conduct, also knowing that the Plaintiff was unaware of the Defendant's condition.

35. As a result of Defendant's gross negligence, Plaintiff has suffered significant physical and financial injuries. As a result of contracting HSV-1, in addition to the physical pain

and discomfort associated with her condition, Plaintiff will also be subject to significant financial hardship through payments for prescription medications and treatments.

36. In view of the foregoing, because of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

37. Plaintiff hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

38. Defendant's breach of his duty to exercise reasonable care has caused Plaintiff significant emotional distress and has endangered her physical safety by transmitting both HSV-1, an incurable sexually-transmitted disease characterized by painful genital sores and lesions.

39. Defendant's engaging in unprotected sex with Plaintiff on multiple occasions, while Defendant had knowledge that he carried a sexually-transmitted disease and while Plaintiff was unaware of Defendant's contagious condition, constitutes extreme and outrageous conduct.

40. Defendant's actions have caused Plaintiff to fear for her own safety, to fear future injuries in the form of painful and embarrassing outbreaks of genital herpes, and to fear embarrassment, rejection and humiliation in disclosing her condition to future sexual partners. As such, and as a direct result of the Defendant's actions, Plaintiff is currently suffering from serious and significant emotional distress.

41. In view of the foregoing, because of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION - BATTERY (STDs)

42. Plaintiff hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

43. Defendant's intentional actions, engaging in unprotected sex with the Plaintiff, were extremely harmful in nature and caused Plaintiff significant injuries in the form of a sexually-transmitted disease. Plaintiff was completely unaware of Defendant's condition at the time, and Plaintiff would never have consented to unprotected sex had Defendant made the appropriate disclosures. Even though Plaintiff consented to all of these sexual encounters, Plaintiff never consented to transmission of the disease, and Defendant was aware that Plaintiff was worried about contracting sexually-transmitted diseases as she had asked him about his status. Consequently, the transmission of HSV-1 which the Plaintiff has now contracted was not consensual.

44. In view of the foregoing, because of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION - FUTURE MEDICAL EXPENSES ARISING FROM TORT

45. Plaintiff hereby re-alleges and incorporates by reference the allegations of paragraphs 1 through 27 of this Complaint as if fully set forth herein.

46. By reason of Defendant's actions, Plaintiff has suffered severe personal injuries along with significant mental and emotional damages, which will have long-lasting financial implications. Plaintiff will be required to take costly medication for the remainder of her life, will suffer from outbreaks consisting of painful sores and lesions which will require medical attention, lab work and tests, all of which are associated with steep medical bills.

47. All of these conditions will constitute a significant and lasting financial burden on Plaintiff for the rest of her life.

48. In view of the foregoing, because of Defendant's wrongful conduct, Plaintiff has suffered damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

49. Plaintiff requests that the Court:

1. Enter judgment in favor of Plaintiff;

2. Award Plaintiff compensatory damages in an amount to be determined at trial;

3. Award Plaintiff punitive damages in an amount to be determined at trial;

4. Award Plaintiff her attorneys' fees and costs; and

5. Grant to Plaintiff such other and further relief as Plaintiff may be entitled as a matter of law or equity, or which the Court determines to be just and proper.

## **JURY DEMAND**

50. Plaintiff Jane Doe demands a jury trial in this matter.

**WHEREFORE**, Plaintiff Jane Doe demands compensatory damages against Defendant, James Dalimonte, in an amount to be proved at trial exceeding $75,000, reasonable attorney's fees and disbursements, all costs of court, and any other relief the Court finds to be just and proper.

Dated: New York, New York
October 28, 2024

LAW OFFICES OF JEFFREY LICHTMAN

By: _____
JEFFREY EINHORN, ESQ.
441 Lexington Avenue
Suite 504
New York, New York 10017
Ph: (212) 581-1001
Fx: (212) 581-4999
E: einhorn@jeffreylichtman.com

Attorneys for Plaintiff Jane Doe
